I will be my name is Howard Luke your honors I represent appellant Michael Furukawa this is a joint appeal seated at council table are mr. Keith Shigetomi the gentleman closest to me he represents mr. Dennis Hirokawa and mr. Hirokawa is represented by mr. Dana Ishibashi we've decided I will do the argument unless there's specific questions regarding those other two defendants. Thank you counsel. Thank you very much your honor. Any time for rebuttal? Yes I am. May it please the court I would ask for approximately four to five minutes for rebuttal. Thank you. Try to keep track of your own time and I'll try to remind you. I have my timer right here your honor. Okay. Hope it works. Thank you very much. May it please the court my name again is Howard Luke I do represent the all the appellants in the conspiracy charge as the court is well aware of defendants went to trial over a period of approximately five weeks from September 26 to October 27 2006 were convicted as charged on both the conspiracy as well as the mail fraud counts were sentenced on October 4 2007 they were found guilty in the same day that was the last day of trial there are a number of issues that we raised in our brief your honor and a number of issues that were raised by mr. Tong and we responded in a reply brief what I'd like to talk about your honor to begin with has to do with the mail fraud count in this case your honor I am asking the court to reverse this case based upon the paucity or lack of evidence pertaining to the mailing of the checks to Mr. Furukawa and also to the other co-conspirators and I've cited in my briefs the case of the primary case of the United States versus Chung Lo that's the Ninth Circuit case that was decided by this court 2000 I would also like to subsume the Third Circuit case United States versus Hannigan which is a 1994 case which is a case that really stands for the proposition is remarkably close to this case as far as the mailings are concerned I I would submit I am going to speak very briefly about a case that has been cited by the government to stand for the proposition that the mail the evidence of it was sufficient that's the Miller case cited by mr. Tong well that's a Ninth Circuit case was decided 1982 it seems to me from a reading of a number of these cases including the cases that were cited by Chung Lo your honors that there has been some evolution in the way the appellate courts have looked at the issue of mail fraud as some of the remarkable comments that we see in the concurring opinion in the United States versus Hannigan seem to really admonish the government from trying to just hitch the wagon of the mail fraud charge to the rather the issue or the element of mailing to the fraud itself as this court said in Chung Lo there's a real danger that once the fraud is alleged and proved that the issue of the mailing itself might be a threat to the jurors and I think that's I don't think anybody would disagree with that seems to be almost an afterthought but as we know this is what brings these cases within the jurisdiction of the United States government your honor let's look at the if we may some of the evidence in this case in our case Sheila Walters was the only witness who testified as to the mailing she was the head of the pre-audit division of DAGS which is the Department of Accounting and General Services for the state of Hawaii she had pretty good knowledge and awareness of the familiarity with Summary 1 vouchers procedures utilized for the processing of payment of the vouchers I have no quarrel with her testimony regarding those matters your honor now the interesting thing is she testified as to the practices that were current as of October 17, 2006 this is the date of her testimony she was examined by Mr. Goya who was the state attorney general acting as special assistant United States attorney assisting Mr. Chong she testified only as to the practices that were relevant and current as of that date now the mailings that were alleged in the conspiracy as well as the overt acts really had to do with the mailings that were examined were in the calendar year 1999 seven years prior to the testimony of Ms. Walters now what's significant is that Ms. Walters never testified that she was familiar with the procedures that were in effect as the time at the time and the date of the checks in question which were purportedly the result of processing and routing back in 1999 no over your honor there is absolutely no evidence whatsoever of postage affixed to any envelope there's no evidence of any envelope for that matter wasn't there evidence of the actual agency records and the respective warrant routing indicators for the time when these checks were allegedly went out weren't they in the record well did they comply with her testimony as how those types of things are processed in other words what I'm trying to say is she's testifying on as you said in 2007 as I read the record I think correct me if I'm wrong the 1999 records of payment the routing indicators and all this stuff were the same type of system that she was testifying to so records that were produced were the same thing she was doing later on it may that may be true your honor that may be true but the interesting thing is she referred to the famous I think that's how you pronounce it FAMIS computer system at the time she testified currently now that might not be a big deal your honor granted maybe now what is computerized was done by hand or by an earlier generation of computer I think it's possible and it clearly is possible good question because it's possible and it would seem to be in compliance with her in agreement with her testimony that the procedures she was testifying to were familiar to her and those indications of the slash mark the indications of whether or not the number one was placed into an appropriate box whether the check was to be delivered or re-routed back to the department all those things she seemed to be familiar with that so you're absolutely right they may have been occurring well are you saying that she failed to show a routine custom and practice of the department to mail checks I am saying she did testify to a routine custom and practice up to a certain point well ok I go along with that let me stop you there because I want to make sure I understand where you're going if she showed a routine custom and practice and then they produced the 1999 documents and they comply with her idea of what the routine and practice is what's the problem the real problem your honor is that she brings this check or she brings a procedure up to the point where a check is generated and then she testifies that well we have a system whereby if the check is to be re-routed back to the department then one indication is given the other indication is whether the check is supposed to be picked up by a courier and brought to the post office that's it there's nothing about the check being placed in an envelope well we're not going to get an eyeball witness on the check putting in an envelope I agree with that but if you're going to use routine custom and practice and if the slash through the word mail rather than through the word delivery was there and if that's part of the routine practice and do we then have to say well that's fine but now we have to go further and get an eyeball witness on the check in the mail I don't think that's necessary your honor I think the cases are against me as far as putting the check absolutely then you're just saying that the routine custom and practice is not acceptable no that's not what I'm saying your honor what are you saying I am saying it's fine if the routine custom and practice is not attenuated at the point in which the mail at the point in which the check was supposed to have been placed in a basket and was supposed to have been picked up by a courier and we don't even know who the courier is we don't know if it's a courier from the state of Hawaii we don't know if it's a messenger service we don't know if it's a FedEx or UPS person we don't know if it's a mailman or a mailwoman or a delivery person we have no idea so you're saying the check it shows that the check was processed it shows that it was to be mailed but you're saying there's no showing custom and practice of where it went after that that's correct absolutely correct your honor but beyond that so what do you make of her testimony when she's asked about that point and they confront her with the exact checks and she says this the question so in this particular case how are the checks on this document delivered answer mail if you look at that excerpt that you're citing to your honor you will see that I objected that was overruled I don't think with due respect to the trial judge I think that was erroneous ruling I think it should be sustained we're looking here at the sufficiency of the evidence she says she's tested she worked there 25 years she said she had supervisory capacity she was given the checks and then she opines on it why isn't that enough that's not enough I mean it's different from loan because we didn't even show that there was a document right it's different from loan but it's really you know it's slightly different from loan because there is no document in loan but I think the government had an even better argument in loan than it would have in this case that if the loan was approved then obviously the truth in lending document would have been generated and mailed because otherwise the loan would not have been approved I think that's really solid circumstantial evidence your honor and now she's going to handle we have a Hannigan case in Hannigan the third circuit which was approved of I believe by Chung Lo the court in Hannigan said well it was brought to the mail room it was brought to the mail room I think that an interdepartmental mail room would more likely satisfy the likelihood of having it in place in the United States mail than in our case that's a good jury argument and that's a third circuit case and this is a sufficiency of the evidence in this case and we're supposed to go back and retry to find out whether the evidence was sufficient and out guess the jury when this evidence went to the jury in fact all your errors here are all trial and sentencing errors and the standard review are extremely they're not in your favor very frankly when you're trying to re-argue the case you're making an argument here for the jury that they shouldn't have believed this the evidence went in well your honor you're right I did make a motion for a judgment of acquittal one of the grounds was the mailing itself that was denied it goes to the jury but I think what we have here is the Chung Lo situation where the jury is looking at the fraud well these guys commit so much fraud good enough whether it's fraud or what you mean to tell me in a fraud case we're going to have to instruct the jury on differently how they're going to view the evidence they're going to view the evidence as presented if the evidence didn't go in or if the evidence was improper going in that's one thing if it's not routine custom and practice if the documents are not there but in this case we have routine custom and practice documents in testimony by the person that does the job the jury makes a decision that's true and we're supposed to review that under what standard well your honor I am asking the court to take a look at the facts that were presented at trial I would submit that no reasonable juror could have found guilty on a reasonable doubt and what standard of review do we apply I think it's clearly erroneous your honor clearly erroneous I know it's a tough standard I'm sympathetic to your argument I'm also looking at it as an appellate judge on what standard of review we have in the nature of what you presented to your appeal yes I understand that your honor let me just finish up on that what the government could have done in this case all they had to do was bring on one or two witnesses to show some evidence that this the check by the way we know the check was folded that much we know it was folded whatever that means what we don't know is if it was put in an envelope Hannigan we know it was put in an envelope we don't know if postage was a fix we don't know if there was a postal meter that stamped the envelope the chain of inferences is broken at a time where the movement of the check to what was purportedly ending up in the United States mail was broken well before the time that the time it should to make this this evidence sufficient for the purposes of finding the defendants guilty of mail fraud that's my that's my position in this case I would like to also very briefly talk about what there was an interesting concurring opinion in the Third Circuit case in citing United States versus Burks and what the Burks case I don't mean to get too far from the geographical location of where we are this is again a Third Circuit case but the Burks concurring opinion said that under their precedence had the government proved that 99% of the letters reaching the mail room were delivered to the U.S. mails the evidence was still a fall short establishing guilt beyond a reasonable doubt now we have the mail case which is really a tenue I mean this is okay you have two you have two options mail don't mail if you if you know you don't take the don't mail option I mean excuse me if you take yes you don't show evidence of the don't mail option then the check is mailed delivering mail yeah I exactly you know and I think this is really bad I'm sorry due respect to the court is long gone 1982 but I think the great thing about this court is that in Chung Lo this this very court had yes in Chung Lo had adopted the I don't know if the holding but it adopted the analysis that was espoused in Hannigan I have to say this what the judge said in Burks was the following this is the conclusion I hope that the government will be more careful with its decision as to when to bring mail fraud charges if it is the problem for the most part will go away but I think that's what we need here we need something more than just this pre-audit manager pre-audit manager from DAGS coming in to testify which he could up to a certain point and then BAM it's we don't know what happened to that check you know there's so many other issues I would like to touch briefly on the qualifications of the expert witness as well as the restitution issue your honor very briefly I think we've I tried to brief the issue of the experts lack of qualifications I asked the court to take a look at the Smith Klein case that we have cited now Smith Klein admittedly your honor is a it's not a Ninth Circuit case and it's not even a court of appeals case it's a district court case but I think the analysis of Smith Klein is appropriate because the facts come so close to our case we're talking about contractors we're talking about Mr. Furukawa Mr. Uemura who chose not to appeal and the other contractors who were found guilty or entered plea bargains but they didn't have any conviction at all they all ended up with deferrals as far as I know which means that they could obviously ultimately dismiss the charges against them but in the Smith Klein case your honors Smith Klein talked about two contractors this is a by the way this is a motion to eliminate ruling allowing in the testimony of these two contractors because the two contractors roofing contractors had the background they did approximately one of them high grade did approximately 300 appraisals a year I'm running out of time but the point is the Smith Klein case did say that this is the appropriate way to determine what the bids should be if you look at if you look at Mr. Goldblatt's testimony what he is proffered for his qualifications as a construction consultant does not qualify him for this type of bidding work your honor your honor the thing that I'm really concerned about is now I'm going to talk about what happened at sentencing but Mr. Goldblatt's participation in the sentencing is important because on the unreviewed on the unreviewed matters such as contracts and the billings that were put before the judge did agree that were part of the restitution order Mr. Furukawa had to pay an additional $3,933,616.79 this was just put out there in summary fashion it was just we don't even know who these investigators were they took this number threw it against the wall see if it was stiff and it did your honor are you talking about the costs of the investigation? no that's another thing that was additional issue you're talking about the contract itself yes your honor the contracts that were not in the contract because he wasn't qualified to talk about the structural ones as opposed to the smaller amounts that's part of it your honor but I'm saying that even if Mr. Furukawa, Mr. Hirokawa, Mr. Okada should have been held responsible for restitution and the amount of the contracts that went under review they were also held responsible for additional number of contracts that were not reviewed and that amounts to $3,933,616 is that clear error? I think it's clear error beyond any doubt your honor I think it's really clear error I'm much more confident I'm not going to minimize the lesson I'm much you're much more outraged yes I'm outraged and Mr. Hirokawa I need to speak if I speak for them I'm running short of time but he had over $4,000,000 as did Mr. Okada now I need to say this very quickly in the Scribner and Watson cases that were cited by the government Scribner was a telemarketing fraud Watson was a telephone cloning case in those cases these are real crooks they were not there to victimize elderly people that's Mr. Scribner and his son telemarketing fraud Watson victimized people by leasing but they had the benefit your honor of the work none of the jobs was not completed the issue is well probably they were high yes your honor I'm not going to suggest that they were not I'm not going to suggest that there was not fraud in the complimentary bids but what I'm saying is that they went forward they did every job that they were assigned to do and the state got the benefit of their work don't forget the airport was in very bad condition and these gentlemen did perform albeit at a value excessive perhaps but that wasn't the issue as I stated in my brief the issue is whether the expert was qualified to talk about bids as opposed to value thank you very much thank you we'll give you some time to rebuttal good morning may it please the court counsel my name is Larry Tong I'm an assistant United States attorney representing the government I was also the trial counsel on this matter I say that only because I very much enjoyed my friend's argument in part because it was a replay of the trial arguments that were made but as Judge Brunetti points out we are here on appeal now and I think the court is duty bound to apply a somewhat deferential standard of review in many cases even plain error review with regard to the mail fraud convictions on the sufficiency of the evidence of course the standard is highly deferential the question for this court to decide is simply whether any rational jury could have found that the elements were proven beyond a reasonable doubt I submit to your honors that the evidence was not only sufficient but actually overwhelming we called the manager of the very department which was responsible for the very payment of the checks in question she testified in Judge Brunetti's words to the routine custom and practice used by the department something that is acceptable for the prior decisions of the circuit which established that direct proof of the mailing the use of an eyeball witness the person to testify that there was a stamp physically affixed to the envelope is not needed and in this case we not only went through the custom and practice of the department but we had the actual documents even though those documents were years before the events in question we had a document generated with regard to each of the checks at issue with the clerk's notation that each of those checks was to be mailed now that was adequate from which the jury could conclude beyond a reasonable doubt that the checks were mailed but to the extent anyone wants to toss out the need for eyeball testimony I might just note in passing that we also had the cooperating contractors in this case who provided testimony about the conspiracy and the scheme to defraud and we asked each of them by the way when you engaged in this conduct how did you get paid and they said by check we said well how did you get the check they said through the mail the United States mail the specific references there appear on page 51 of the government's brief I believe in a footnote so when you put it all together on a sufficiency review the evidence was more than adequate to support the assertion that each of the checks in question was mailed there are many issues here I think we've addressed most of them in our brief I think Mr. Luke was trying to hit on many of them I don't know if the court has particular questions or issues it would like me to address otherwise we're he also admitted he was not going to dispute that there was fraud in the complimentary bid so that kind of knocks off some of those issues I noticed that that was a bit different from the trial proceedings but certainly it appears that he's now admitting the fraud and his challenge now seems to be to the sufficiency of the proof of the mailings presumably because he thinks that's the way to get rid of the entire case he also mentions the expert that the expert it sounds to me when I read the briefs that they wanted an expert that would be doing the same kind of bidding precisely as in airports that the problem is getting in and out of the airport etc etc but again we have the standard of review here the question is how do we judge with the district judge in allowing that testimony in at our level on the standard of review that's right your honor I think it was well within his discretion to allow the expert to testify the expert was certainly qualified in the area in which he offered testimony there clearly was relevance as we've pointed out in the indictment we allege number one there was a fraud that existed through the use of the complimentary bids which Mr. Luke apparently has admitted today for the first time for purposes of appeal he's contesting yes your honor but I just have to remind him of it because I'll remind him after this argument that this is the first time I've heard him say that well there are certain things that the district court has settled and you can't really successfully appeal you may still think the district court was wrong to do that but it's not appropriate for appeal right I agree your honor the one thing I would emphasize is the district court here performed its gatekeeping function with regard to the expert he started out quite frankly Judge Ezra did without knowing specifically what jobs the expert was going to opine on saying well you don't have the expertise and the specific requirements on airports such as building tarmacs, building runways, complying with engineering criteria that might be unique to that kind of department of transportation facility and when it was all said and done what he allowed Mr. Goldblatt to testify was to those minor non-structural repairs the cost of which the performance of which would be the same regardless of their location in other words whether it be repairing ceramic tile in the courthouse or in a public bathroom or in the airport the location wouldn't matter there are industry standards that are used which Mr. Goldblatt relied upon it seems to me that these particular contractors were all pushed into this level of repair work which as you said tile generic stuff it wasn't like electronics and airport stuff so as I remember Goldblatt had extensive history in the construction industry and management bidding and whatever so he was used to find out what the reasonable value of these services was I read the record that's absolutely correct your honor he had 40 years in the construction industry beginning as a teenager working for his dad doing small repair work continuing as a contractor in another state not in Hawaii and also doing project management here in Hawaii interestingly one of his assignments had been to work as the manager for the state of Hawaii housing authority in the repair of 350 some homes many of which required the same kind of repairs that were done here and he applied that expertise of course this is not a scientific field subject to peer review analysis although the brief referenced that in portions of I think the Kumho tile tire case rather this is a situation where you can look at his practical experience in the field which the court did very carefully counsel does bring up the issue of the damages indicating that there were some in the methodology in which they adopted that Judge Ezra adopted the final damages well again your honor he adopted the findings well he adopted the recommendations of the pre-sentence report with regard to the relevant conduct for which for which each conspirator should be held accountable there's nothing wrong with that this court has said that adopting the factual findings of the pre-sentence report suffices to discharge the district court's obligation with regard to the loss methodology that's the one I'm talking about again I think I'm answering your question backwards but again your honor that is consistent with the two cases I believe they're Watson and Schroedner I don't think either of those cases supports the notion that you if there's proof that no loss occurred that you can demand restitution for that your expert whose qualifications you just discussed in some detail yes said there were six contracts that were underbid right he didn't say underbid he didn't he wasn't allowed to use those words and actually what he said is he didn't have sufficient knowledge going back after the fact to determine the precise scope of the work so what he did and with regard to those six contracts is assume the worst case scenario even though it would understate are you talking about the expert or the judge the expert in other words your honor there were some jobs that he looked at right we have six that we that in the record there's no proof of that there was overbidding no but that was that was factored into the percentage of loss that's saying that between 68 and 90 and therefore we're going to do 68 for all of the contracts even the ones that we have no proof on how does that how can you sustain that okay well there's two issues there your honor first off I think that the cases that I referenced earlier stand for the proposition that you can use a methodology that will derive a reasonable estimate of the loss that's under the guidelines there's no question about that and you can just say that and then say well this is reasonable because we put up percentages I'm not saying that your honor I'm just trying to proceed in a manner how do I get from point A to the end result so we try to give the court a methodology by which it could come up with a reasonable estimate now what we had here is we had the two categories of review documents one category being the review documents or contracts that were specifically referenced in the indictment we came up with a specific loss that was applied with regard to those contracts those contracts I think were according to the expert 90% overbuilt in other words the value of the work reasonably was 10% of the amounts that were actually paid that was 68 to 90% the first category of contracts referenced in the indictment it was 90% the second category of documents or contracts small purchase contracts that were reviewed also related to the co-conspirators but were not specifically identified in the indictment the loss amounts there represented 68% of the total billed amounts so what the court did what probation did what the court adopted what we agreed with is essentially we took the most conservative estimate in other words the estimate most favorable to the defendants 68% amount and applied it to the universe of the contracts the universe of the contracts were submitted well maybe the most conservative in terms of the percentage but in terms of the actual amount ordered for restitution it was greater wasn't it? it becomes greater because the universe is greater you really can't say that it's the most conservative approach as to the defendants when if you add in everything else including the universe of questionable contracts it ends up in more restitution ordered than would have been the case had you just simply done 90% and 68% that's right your honor but one of the issues is relevant conduct and you look at the jointly undertaking criminal activity and in this case if I may I mean what we have here is a group of defendants and other co-conspirators who knowingly submitted bids that were inflated through the use of these complimentary false bids we showed a pattern of the use of the false bids but your honor I'm going a step further because if I understand your honors question correctly what you're saying is that we should limit ourselves to the reviewed contracts whatever they may be and what I'm saying is we knew that there were more than that we knew that because as it has been offered today for purposes of appeal only we proved up the fraud so now we go a step further and we say well during the exact time period of the conspiracy that was alleged what were the total amounts of the contracts that were awarded to those who participated well is there some reason those other contracts couldn't have been reviewed by somebody else money money well I say that it would have been worth spending the money to get it back well your honor with all respect I mean these are small jobs and I can't remember the figure but Mr. Luke actually would probably remember better than I because he cross examined I think Mr. Goldblatt incurred about $100,000 in fees just doing the work that he did do and each of these contracts by definition I think Judge Brunetti said that they were left to small jobs by definition they're small purchase contracts having a value of $25,000 or less even at the inflated amounts and if your honors look at government's exhibit one which appears at SCR page one I think we have a total of millions of dollars it simply was not possible to go out and review each and every $25,000 contract to derive a specific number I don't believe the law does require that but they're arguing about six contracts that Mr. Goldblatt did look at I don't believe they're arguing about six contracts I believe they're arguing about the entire universe and my response your honor to that was just that Mr. Goldblatt went back and if he felt that he couldn't ascertain the specific amount of work that was to be done then he would assume the most favorable interpretation to them to give an example if there were to be a scratch to be repaired on wood and he would go to the site and the repairs would be here in this courtroom the scratch could be one inch long or it could be they have to refurbish every piece of wood in this contract and he testified well in those circumstances I assume the entire thing was refurbished and those are specifically the types of categories for the six contracts to which your honor refers where he says well making those assumptions I'm going to say the value is even greater than what they actually built and what I'm suggesting to your honor as Judge Brunetti seems to be implying you don't have to go through a case by case analysis well this is a representative contract that could be taken for each group it was not a statistically valid sampling if that's what your honor means with regard to representative they're representative in the sense that they fit in the same categories i.e. small purchase contracts $25,000 or less supported by the same bidding practice that proved the underlying fraud in other words the use of each other's companies for the bids and the use of the four companies that we proved were submitting bids repeatedly without getting a job and whose principals essentially got up and said we never bid on that and we had no intention of bidding on that and I think there were some 400 bids I don't have the specific number from those companies during the conspiracy which resulted in zero jobs I think we're reviewing for clear error here and if the methodology that the judge used and using the pre-sentence report and the expert is clear error then it all should go out if there wasn't clear error in the sense of selecting the methodology and the expert then it's final determination on the amount is also clear error so where do we look in other words you've given us the process you know it was too much money blah blah blah and so if there could be a process used which is if you're going to use the Scribner formula if you will and if you throw things together and if the expert uses that process and makes adjustments and the judge listens to those adjustments and adopts them then it's got to be clear error somewhere I think to the contrary I don't think that is clear error I would say it's got to be clear error somewhere or else we've got to leave it alone I would agree Is that your position? Yes your honor and in terms of where do you look well frankly you look first to whether the expert testimony could have been admitted for purposes of liability I think on appeal abuse of discretion clearly it was properly used then in terms of loss it becomes the Scribner situation coupled together with the standards of the guidelines which is reasonable estimate using taking into account all available information and I think it's your position too as I remember was that your position is that the appellant is taking a global look at this if you will and saying there's only six contracts that are wrong go back and redo the six but the global application is wrong Is that what you're saying? I think that the six simply shows that he acted in good faith in terms of making his estimation and I think those amounts get factored in with the others which derives a multiplier that can reasonably under the law be used to apply to the universe But if you just took the six the answer would be zero restitution right? If you just took the six but he reviewed No no you understand that But here is his testimony that as to these six contracts there's no overbilling zero For those six contracts? Right Yes So but as to those six contracts he ordered restitution in the calculations correct? I don't believe we ordered restitution as to those six specific contracts I don't believe it was that specific what it was is what was the overall law? I don't know We know because we know the methodology that was used The methodology that was used is I guess what the district court said and maybe you can correct me is that well we've got 68 to 90 and so we're going to apply 68 across the board to everything including the six contracts Oh I misapprehended your honors question Okay The six contracts for which the expert said there was zero money that should have been owed if we took them all out are included in the 68% right? So my problem is if we have clear evidence in the record I understand the general methodology that might be fair as to the contract but if the expert says even being generous and I understand your point on that that there was no overbilling on those contracts how can we order restitution for it? Well your honor that's a good point as to six particular contracts but what I'm saying is the methodology Well that was my only question I apologize I misunderstood your question I frankly misunderstood But the district court included them there's no evidence to support that so even under clear error how do we include those? Because we employed a methodology which basically was essential under the reasonable estimate provisions of the guidelines you know what the universe is you go to it I don't know that I frankly I could be wrong I don't know that he was asked to carve out six specific contracts at the time of trial Well if we throw out the six then we got to throw out everything that weren't given enough because if there were some contracts that were 90% overbilled and they only got 68% there's a problem there too Well that's right your honor And the methodology seems to subsume them But I'm missing something here Were those six contracts that are being disputed talked about? Under one contractor, two contractors, a bunch of contractors I don't remember My recollection is that most of those contracts were with a company called Ken Lee Limited Liability Corporation Is it also true that Ken Lee might have got overpaid on some of them? I don't believe so your honor In fact we had direct testimony about what Ken Lee did if I can elaborate In the process of the 68- Oh overpaid yes very much so That's the whole purpose of the process In other words you may submit 15 contracts 15 may be under, 15 may be over 15 may be under and you submit 15 that may be under They put them all together and came up with 68 Now that's the process, the process is either wrong or right As I understand your theory That's correct your honor May I ask you a question? I thought that 68 to 90 was based on the contracts that were examined that were overbilled Correct No No I mean basically if there were overbilling on the contract The average overbilling was 68 to 90 percent That's correct your honor And I believe the- So did you take into consideration in the examination of 68 to 90 Those that were not overbilled? Yes How so? Of the contracts that Mr. Goldblatt reviewed They included the 6 where he said that there was no overbilling And those are part of the subset which are about 256 contracts But I mean he didn't, in concluding 68 percent He was just lumping the 6 in with everything He did a mathematical averaging of all And I think that's You're saying that in reaching the 68 to 90 He considered in reaching that figure Those contracts where there was no overbilling Yes your honor As well as those where there were If he had just taken the ones that were overbilled He would have reached a higher figure than 68 to 90 Yes your honor Are you sure that's not in the record? Can you point to it? Can I point to it? Well it's in the I don't have an SCR reference But it's in the charts The spreadsheets that we introduced Because at trial he testified I did look at the spreadsheets And I didn't see the zero in there Well I can assure the court that when he testified He testified about those contracts As to which he concluded there was no overbilling Because he was cross-examined on it Otherwise it wouldn't be in the record And those are part of the 200 some contracts That he specifically reviewed And if I may make one point I see my time is out But on review One thing I should point out is Our loss calculations using this procedure I think came in at about 3.6 million You would have to reduce it all the way to 2.5 million Before you could find that a lower guideline range would apply So even if six of those contracts were eliminated Using the court's suggestion At a maximum of $25,000 per contract You're talking about $150,000 Which fits the amount of restitution but not the guideline sentence Absolutely I guess it sums up If you could answer in 30 to 60 seconds How you charge for the entire attorney general's investigation Wasn't there a criminal case? This is a criminal case Of course this is a criminal case Your Honor, I have to say that the record is silent And to a certain degree this falls back on Who suffers from the lack of factual development I know the court suffers But in terms of the parties Whose burden it was to develop the record There was never an objection To the inclusion of restitution to the state For the investigative costs The Mandatory Victim Restitution Act of course Requires that all direct and foreseeable costs Be awarded to a victim And that's what happened here And in the absence of an objection We never developed the record I know as a representative of the government Sitting here today What the answer is But it's not in the record Are there any other cases In which the restitution's including The cost of the attorney general's investigation In fact of the criminal case? Even in this particular case? No, in general I'm not aware of any But this was a unique case Where the state attorney general Started prosecuting some of the co-conspirators As reflected by the record And then brought these four individuals over For federal prosecution But the record does not reflect What portion of those costs That were awarded, six hundred some thousand Were for the gathering of information As a direct and foreseeable consequence of the offense As opposed to gathering it for criminal prosecution And we're reviewing for plain error on this argument? Again, we're reviewing for plain error And I don't think that they can show That the sentence either was clearly illegal Or that there was plain error Where no objection was made Such that we could respond with evidence In the district court At a time when it would have been meaningful Thank you, counsel Thank you, your honor May it please the court, Mr. Tong Could you take 30 seconds to answer the last question? Yes, your honor I wrote an extensive sentencing memorandum I submitted the total advisory guideline loss Should be $364,817 Or at most $1,398,000 I don't believe, your honor That what Mr. Tong is speaking about The investigative costs Are anything other than plain error This is what the judge did in sentencing Admittedly I didn't harp on that When I initially argued Because $689,000, $685,000 Tales in comparison to the unreviewed contracts I mean, my client and the other clients The other defendants You know, were held responsible For almost $4 million that were unreviewed That's my response, your honor I think it is plain error Sure, it's plain error review But I mean, why then should we consider it now On plain error review? Why do you succeed on plain error review On the restitution of investigative costs? Because that came up at sentencing They were held responsible for that amount at sentencing Not before the jury The judge decided that I objected to that I made my argument to the Honorable Judge David Ezra As to what the amount should have been He disagreed And he just adopted the findings of the pre-sentence report Which I clearly objected to If he objected, then why is it plain error? Well There's a clear error review Which is clearly erroneous But plain is I'm sorry, it's clearly erroneous, your honor Because I did object to it You did object to it Yes, your honor It's in my sentencing memorandum I made my objections to the PSR The pre-sentence report But Mr. Tong indicated that if you made an objection You would have come forward with more evidence And you say you didn't make an objection Well, let me put it this way, your honor I filed a sentencing memorandum That consisted of 19 pages Mr. Tong simply had no objections to the pre-sentence investigation report My sentencing memorandum, your honors Is part of the record And it's signed at page 6 I do have objections to the pre-sentence report Including the offense conduct The amount that was determined to be compensable as restitution The advisory guideline computation Which was driven by the amount of restitution, your honor Did you specifically object to the 689-685 To the Department of Transportation? There's a terrible way to ask the question But I don't know, your honor I know I looked specifically at what was attributable to my client And I said this is how much you should be held accountable for By not specifically objecting, your honor Yes, my answer would be yes I just want to say one last thing Yes, when I said that there was evidence of fraud in the complimentary bids It's clear that there were fake bids that were put out In the attempt to obtain the award for the work that was bid for However, I also argued And I think in our briefs we argued The good faith reliance I submit to your honors to do what you will with that But I think the evidence is there There was layers of review from people who actually looked at this And approved and adopted these bids that were submitted by our defendants There was verification approval of work performed There was a certification of work performed There was a recommendation for payment There was further certification and verification of work performed And this is not simply just on the bids itself Looking at the work and seeing that the work and invoice was correct in every respect By Anne Hayashi that the goods and services were rendered So I'm suggesting your honor that there is a place for the good faith reliance By our clients on the approval by the state of Hawaii Can you clarify your restitution argument for me Are you arguing to exclude six transactions Or are you using the six transactions to argue that the calculation methodology On the unexamined contracts should go back Yes, the latter your honor Obviously Can you state that clearly please Yes, yes His honor was asking about There were at least six contracts That were determined by Mr. Goldblatt To have been underbid Actually it's not that the government This doesn't matter of just having a wash It's that the government benefited because they were so undervalued I'm sorry I can't say where they are in the briefs right now But it's clearly in the record Your honor it's absolutely right that this This is absolutely So they're underbid so what So what's wrong So then the unreviewed contracts The unreviewed contracts make no account of the high likelihood The great probability that there was work performed That was either Within the range of I'm going to use Mr. Goldblatt's term Value of the work performed Or that the state that the benefit of a Grossly underbid piece of work Or it's highly likely that there was a bunch of them that were overbid Yes And they used the formula of 68% So I think what you're questioning then is the whole process I am Because of the six it shows that the process was flawed That's correct Yeah the process was clearly flawed And not only for that reason your honor They weren't reviewed Now you would agree though as I understand it And with the government that The six contracts you've been talking about were included in the 60% computation In other words that would be zero or some benefit Of those For whatever percentage was involved in those contracts for The value would have been included in the calculation that resulted in a minimum of 68 maximum 90 I think I'm not sure your honor I know I knew the answer to that because I really studied this I'm not sure I'm terribly sorry I can't answer that What if the record shows that they were Well I still think the methodology was erroneous Again I understand that but if the records show that they were Then you're still questioning the 68% That's correct your honor Because you have unreviewed contracts you don't know what they are They could be up they could be down Absolutely right And your honor please as I stated This is not a Scribner and Watson type of case This is not a case of pure unmitigated theft Or taking advantage of senior citizens in a telemarketing fraud With absolutely no benefit to those individuals We're talking about bids for work that was performed by licensed contractors Perhaps overvalued I mean the evidence is pretty solid there But nevertheless the work was done in many cases So if there's a fraudulent overcharge So what that it's not elderly citizens Because I'm not quite sure where you're going with this argument If the evidence is that it was overcharged by let's say 50% Whatever the percentage is This is my response your honor In the Scribner case you're talking about a methodology that was used And Mr. Tong says well take a look at these cases Look what they did in those cases which was approved by the 9th circuit However in those cases the number does extrapolate The manner in which restitution was determined to be appropriate Involves pretty clear and simple fraudulent practices Without the possibility of any benefit to the victim Without the possibility that not only did the victim benefit But benefited to the extent that the contractors themselves lost money Why isn't that concern taken care of by the percentage In other words you still have either 10% or on up a percent of value left If you've been tagged with a whole loss I can understand your argument But it wasn't the point of doing a percentage The idea of retaining value or estimating some value to the work performed And not requiring your clients to be ordered restitution on that In a sense yes your honor but it's different It's different because there's no evidence about what was done in these contracts I'm very uncomfortable with just throwing the 68% Extrapolated from a very small sample And applying it to a great number of unreviewed contracts Also Mr. Tong's statement well not enough money your honor You know you can't pay enough for justice I think it's a disingenuous argument I don't think it would be very difficult If you look at Mr. Goldblatt he just looked at photographs And he was wrong we had witnesses that testified in trial And they're part of the record that said No no you need to do more for Terrazzo As for Kirby he never considered They all went to the jury They all went to the jury so I'm not arguing that But what I'm saying is it goes to the restitution It goes to when the methodology that was used by Mr. Goldblatt is applied The 68% comes out of Mr. Goldblatt I mean it's based on Mr. Goldblatt's evaluations If his methodology is faulty there's no possibility of the 68% You're just saying the judge made a clear error That's correct your honor Thank you counsel Thank you very much your honor The case to the judge will be submitted The court will take a brief recess
judges: Reinhardt, Brunetti, Thomas